Case 2:19-cv-00337   Document 16   Filed on 04/14/20 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
April 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| FAUSTINO OVALLE, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:19-CV-337 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, Faustino Ovalle, is a state prisoner incarcerated at the Darrington Unit in Rosharon, TX. (D.E. 1). Proceeding *pro se*, he filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his 2012 San Patricio County convictions for aggravated assault. (D.E. 1). Pending is Respondent's Motion to Dismiss filed on March 20, 2020. (D.E. 14). In response, Petitioner timely filed a "Motion for Objections on Respondent's Motion to Dismiss." (D.E. 15). The undersigned construes Petitioner's motion as his Response to the pending Motion to Dismiss.[1] For the reasons stated below, it is respectfully recommended that the Court **GRANT** Respondent's Motion and **DISMISS** this action as time barred. The undersigned further recommends that the Court **DENY** Petitioner a Certificate of Appealability.

---

[1] Thee Clerk of Court is **DIRECED** to docket Petitioner's "Motion for Objections" (D.E. 15) as Petitioner's Response to Respondent's Motion to Dismiss and to terminate it as a pending motion.

**I.  JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254.  A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).  Jurisdiction and venue are proper in this Court because Petitioner was convicted within the Corpus Christi Division of the Southern District of Texas.  *Id.*; 28 U.S.C. § 124(b)(6).

**II.  BACKGROUND**

On March 29, 2012, after a jury trial, Petitioner was found guilty of four counts of aggravated assault.  (D.E. 1, Page 2 and D.E. 10-29, Page 7).  Petitioner filed a direct appeal and his conviction was affirmed on January 9, 2014.  *Ovalle v. State*, No. 13-12-272-CR, 2014 WL 69545 (Tex. App. – Corpus Christi 2014, pet. ref'd); (D.E. 10-2).  Petitioner then filed a petition for discretionary review ("PDR") which was refused on July 23, 2014.  *Id.*; *Ovalle v. State*, PD-0570-14 (Tex. Crim. App. 2014).  Almost four years later, on or about June 21, 2018, Petitioner filed a state habeas application challenging his convictions which was denied on September 11, 2019 by the Texas Court of Criminal Appeals ("CCA") without a written order on findings of the trial court after a hearing.  (D.E. 10-21 and D.E. 10-29, Page 11).  On November 4, 2019, Petitioner filed the pending federal habeas petition.  (D.E. 1, Page 17).

**III.  APPLICABLE LAW**

Respondent asserts this action should be dismissed as time barred.  The undersigned agrees.  Petitioner's habeas petition is not timely filed pursuant to the

Antiterrorism and Effective Death Penalty Act ("AEDPA") which establishes a one-year statute of limitations period runs from the latest of four alternative dates:

    (A)    the date on which the judgment become final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  This period is tolled during the time a petitioner properly files for state post-conviction writ review.  28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.")  Petitioner filed his current petition after the effective date of AEDPA and so is subject to its provisions.  *Lindh v. Murphy*, 521 U.S. 320 (1997).

Petitioner did not file a petition for writ of certiorari and therefore, his conviction became final on October 21, 2014, when the time for filing a petition for writ of certiorari expired 90 days after his first PDR was refused on July 23, 2014.  *See* 28 U.S.C. § 2244(d)(1)(A); *Bradshaw v. Davis*, 736 F. App'x 457, 459-61 (5th Cir. 2018).  As such, Petitioner had one year, until October 21, 2015, to timely file a federal application for

habeas corpus relief. Petitioner's state habeas application filed well after the limitations period ended "did not statutorily toll the limitation clock." *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013). Petitioner filed the pending federal habeas petition on November 4, 2019, over four years too late. 28 U.S.C. §2244(d).

However, the one-year period of limitations in § 2244(d)(1) of AEDPA is not a jurisdictional bar and can be equitably tolled in rare and exceptional circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). A petitioner is entitled to equitable tolling if he shows that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citations omitted); *see also Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (citing *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (citations omitted)). "[N]either excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Id.*; *See also Sutton v. Cain*, 722 F.3d 312, 317 (5th Cir. 2013) (citing *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) (It is "clear that a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling.") (citation omitted). Nor does unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason) or lack of representation during the applicable filing period merit equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 393 (5th Cir. 1999) (citation omitted).

Petitioner does not allege any reasons to suggest equitable tolling applies. Petitioner fails to allege sufficient "extraordinary circumstances" that prevented him from timely filing his claim. Petitioner also did not diligently pursue his rights, delaying over

four years past the deadline to pursue his federal habeas remedy. Additionally, Petitioner's claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. Lastly, Petitioner's claim is based upon evidence that was available to him during the limitations period. Without a basis for equitable or statutory tolling, Petitioner's writ should be dismissed as time barred.

Relying on several affidavits dated between 2016 and 2018 from trial witnesses as well as one from his co-defendant, Petitioner asserts actual innocence as the gateway through which this Court should hear his claim on the merits. While Petitioner asserts his actual innocence presents extraordinary circumstances which warrant an equitable exception to the limitations period, it is respectfully recommended Petitioner fails to meet the actual innocence standard. "A claim of actual innocence, standing alone, is not a 'rare and exceptional circumstance' that warrants equitable tolling of the statute of limitations 'given that many prisoners maintain they are innocent.'" *Jones v. Quarterman*, CIVA H-08-3212, 2009 WL 5216873, at *3–4 (S.D. Tex. Dec. 29, 2009) (citing *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir. 2000) (other citations omitted). However, the Supreme Court has held that a plea of actual innocence may serve as a gateway exception through which a petitioner may avoid procedural bars or the expiration of the statute of limitations. *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (citation omitted). The Supreme Court made it clear, however, that "tenable actual-innocence gateway pleas are rare" and "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no

juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. (citation omitted). Even when petitioners who assert claims of recanting witnesses provide affidavits from those witnesses, the affidavits are viewed with "extreme suspicion" by the Fifth Circuit. *Summers v. Dretke,* 431 F.3d 861, 872 (5th Cir. 2005).

Petitioner fails to cite to any evidence showing he satisfies the demanding actual innocence standard. Petitioner was convicted of four counts of aggravated assault after he was in a physical altercation with Jaime Martinez ("Jaime"). The altercation started as a fist fight and ended with Petitioner hitting Jaime with a gun and firing multiple rounds at the vehicle Jaime was attempting to leave the scene in with three others: Oscar Martinez ("Oscar"), Javier Martinez ("Javier"), and Steve Martinez ("Steve"). (D.E. 10-8, Pages 2-7).[2] John Gabriel Guzman ("Guzman") was also present during the initial altercation between Jaime and Petitioner. Guzman ran from the scene when the shooting started instead of getting into the truck with the others. (D.E. 10-8, Pages 2 and 5). Petitioner's co-defendant, Michael Ruiz, hit Javier while Jaime and Petitioner were initially fighting and there is some testimony that he was originally in possession of the gun later used by Petitioner. (D.E. 10-8, Pages 2, 4 and 14). Ruiz did not testify at trial and the case against him was dismissed due to lack of evidence. (D.E. 10-16, Pages 6-8 and D.E. 10-27, Pages 18, 21, and 51).

Steve, Oscar, and Guzman all testified they saw Petitioner with a gun. (D.E. 10-8, Pages 3-5). Jaime, Steve, Guzman and Oscar all testified they saw Petitioner hit Jaime

---

[2]The state appellate court summarized the facts of the case in detail in its 2014 opinion and therefore, the undersigned need not repeat them here at length. (D.E. 10-8, Pages 2-7).

with that gun. (D.E. 10-8, Pages 3-5). Further, Steve, Javier and Oscar stated they heard gunshots as they drove away and Guzman testified Petitioner pointed the gun at the truck and shot approximately four times. (D.E. 10-8, Pages 3-5). Jaime called 911 after the incident, identifying Petitioner as the assailant who had shot at them. A recording of this 911 call was admitted and played for the jury at trial. (D.E. 10-8, Pages 4 and 5). Additionally, a video taken from a surveillance camera was also played for the jury showing a vehicle speeding away and several flashes coming from the vehicle. (D.E. 10-8, Page 6). Lieutenant Eric Blanchard testified the flashes were consistent with being muzzle flashes from a firearm. Blanchard further testified the events in the video were consistent with the witnesses' statements. (D.E. 10-8, Page 6). Additionally, a firearms expert testified that while no weapon was recovered, a bullet jacket found at the scene was consistent with those found in the residence where Petitioner was staying, specifically in the room where Petitioner was initially detained. (D.E. 10-8, Page 6-7 and D.E. 10-15, Pages 247-250 and D.E. 10-16, Pages 19-26).

Petitioner cites to four affidavits from Guzman,[3] Jaime, Steve and Ruiz. (D.E. 1-1; D.E. 1-2; D.E. 10-29, Pages 104-105; and D.E. 10-29, Page 106). Jaime now avers he never saw Petitioner with a gun and only testified he did because the prosecutor pressured him. (D.E. 1-2). However, this affidavit does not differ from his trial testimony as Jaime

---

[3]Petitioner has submitted an affidavit, allegedly from Guzman, which states he did not see anything and was pressured by the prosecution to testify he saw Petitioner with a gun. (D.E. 1-1). However, Guzman's affidavit is unreliable and not properly authenticated. Therefore, the undersigned recommends the Court not consider the affidavit in resolving the instant motion. (D.E. 1-1). The first sentence indicates the affidavit is from Jaime, rather than Guzman, and while the first page containing statements regarding the gun and the incident itself is typed, the second page, which contains the notarization, is handwritten and states only that nobody from the defense spoke with him. Additionally, while Jaime and Steve testified at the state habeas hearing in 2019 similar to their statements in their respective affidavits, Guzman did not testify. (D.E. 10-27, Page 87).

testified at trial that he did not see a gun and did not see Petitioner with a gun. (D.E. 10-15, Pages 166, 172, 179, 180). Jaime further testified that: (1) in his intoxicated state at the time of the incident, after having consumed 12 to 18 beers, he did not remember much but he remembered getting into the physical altercation with Petitioner; (2) Petitioner stating to Ruiz to "give me a gun," (3) running to the vehicle; (4) Petitioner hitting him on the back of his head between five and seven times with either his fist or something else he did not see; and (5) sustaining a concussion as a result of the altercation. (D.E. 10-15, Pages 166, 167, 169, 172, and 180). Jaime further testified that Oscar, then age 15, yelled as they were driving away that, "He's shooting at us." Jaime testified that he, himself, did not hear gunshots and that he made the 911 call identifying Petitioner as his assailant with a gun. (D.E. 10-15, Page 170-171). Therefore, Jaime's affidavit is not materially different from his trial testimony. Additionally, as discussed below, other witnesses testified as to Petitioner having and shooting a gun at the vehicle as it drove away as well as hitting Jaime in the head with the gun.

Steve now avers, and testified at the state habeas hearing, that he did not see Petitioner with a gun and did not hear any gunshots, only testifying he did because the prosecutor pressured him before he testified. (D.E. 10-29, Pages 104-105 and D.E. 10-27, Pages 30-40). However, he also acknowledged his testimony at the state habeas hearing and in his affidavit differed from his initial recorded statement to police the night of the incident, well before he spoke to the prosecutor. (D.E. 10-27, Pages 32 and 36-38). Additionally, the Fifth Circuit has long viewed recanting affidavits with suspicion. *Summers,* 431 F.3d at 861. A convicted criminal defendant, such as Petitioner, must do

8 / 13

more than furnish recanting statements from a witness who has given contradictory statements in the past when there exists other evidence tending to corroborate the trial testimony. *Graves v. Cockrell*, 351 F.3d 143, 153 (5th Cir. 2003) ("Graves cannot meet this burden with the recanted testimony of Carter, given the numerous contradictory statements Carter has made and other evidence of Graves' guilt.")

Here, even accepting Steve and Jaime's affidavits as true, Oscar[4] testified: (1) Petitioner asked Ruiz for the gun or reached directly behind Ruiz for a gun; (2) Petitioner hit Jaime with the gun; (3) he told Petitioner "Don't shoot, don't shoot" when Petitioner pointed the gun at the vehicle he was in; (4) he saw Petitioner run to and then stand by himself at the curb pointing the gun at the vehicle as they drove away; and (5) he then heard multiple gunshots. (D.E. 10-15, Pages 50-60 and 63-67). Javier, who admitted he was afraid to testify,[5] testified: (1) he did not know where Petitioner got the gun but he heard Petitioner tell Ruiz to get him a gun; (2) he saw Petitioner hitting Jaime with something black in his hand; and (3) while he did not see Petitioner shooting, he did hear multiple gunshots as they drove away. (D.E. 10-15, Pages 136-149). Further, Guzman[6] testified: (1) Petitioner grabbed the gun from Ruiz's pocket; (2) Petitioner hit Jaime in the head multiple times with the gun while Jaime was sitting in the vehicle, and (3) Petitioner

---

[4]Oscar is Steve's son and is related to Jaime and Javier, who are brothers. Oscar was 16 at the time of trial. (D.E. 10-15, Pages 43 and 140 and D.E. 10-27, Page 31).

[5]During the police investigation and the trial, several witnesses stated they were scared to testify, including Steve, Javier and Guzman, and Petitioner's cell phone was searched because several witnesses received threatening calls. (D.E. 10-13, Pages 50-51; D.E. 10-15, Pages 208-209 and 270; D.E. 10-27, Pages 70-71; D.E. 14, Page 16; D.E. 14-2). The prosecution and Lt. Blanchard testified Petitioner is a member of the Mexican Mafia. (D.E. 10-13, Page 51 and D.E. 27, Pages 70-71).

[6]Guzman was 17 years old at the time of trial and was Oscar's friend. (D.E. 10-15, Page 91). For the reasons previously discussed in this M & R, the undersigned recommends Guzman's purported affidavit is not properly authenticated.

pointed the gun at the vehicle and fired approximately four shots at the vehicle as it drove away. (D.E. 10-15, Pages 96-117). Additionally, video surveillance of the incident showed the vehicle speeding away and several flashes, which Lt. Blanchard testified "were consistent with being muzzle flashes from a firearm." (D.E. 10-8, Page 6). Lastly, the firearms expert testified the bullet jackets found in the residence where Petitioner was staying, specifically in the room where Petitioner was initially detained, were consistent with those found at the scene. (D.E. 10-8, Page 6-7 and D.E. 10-15, Pages 247-250 and D.E. 10-16, Pages 19-26).

Ruiz, Petitioner's co-Defendant and friend who did not testify at trial, now avers he fired the gun, not Petitioner. (D.E. 10-29, Page 106). However, this is in direct contradiction to all of the witnesses' testimony and evidence as described above. There is no evidence, other than Ruiz's own statements, that he fired the gun. Further, the charges against Ruiz were dismissed and double jeopardy attached. (D.E. 14-2, Pages 4-5); *Drew v. Scott*, 28 F.3d 460, 463 (5th Cir. 1994) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement.") (citation omitted). Additionally, Ruiz's affidavit was prepared over five years after Petitioner was sentenced. *See Komolafe v. Quarterman*, 246 F. App'x. 270, 272 (5th Cir. 2007) (credibility of affidavit was mitigated by the fact that it was submitted eight years after the petitioner's conviction). Accordingly, the undersigned recommends this affidavit is not credible and does not constitute new, reliable evidence.

Petitioner has failed to demonstrate that in light of this evidence, even if properly authenticated, no juror would have voted to find him guilty given the other testimony and evidence presented at trial. Therefore, it is respectfully recommended that the Court find Petitioner fails to meet the actual innocence standard and, accordingly, Petitioner's federal habeas claims are time barred.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA"). A district court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added).

In Petitioner's case, it is recommended that the Court find his claims be dismissed on procedural grounds. Reasonable jurists would not find that Petitioner has stated a valid claim of denial of a constitutional right, or that the assessment of limitations in this case is debatable. If the District Judge orders that Petitioner's habeas petition be denied and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the Court find a COA be denied because he has not made the necessary showing for issuance.

V.  **RECOMMENDATION**

Based on the foregoing, it is respectfully recommended that the Court **GRANT** Respondent's Motion (D.E. 14) and **DISMISS** this case as time barred. It is further recommended that the Court **DENY** a certificate of appealability.

Respectfully submitted this 14th day of April 2020.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).